IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KELLY LORD**, an individual,<br><br>   Plaintiff,<br><br>   *versus*<br><br>**MICHAEL BUTLER**, an individual; and **M3 NEW MEDIA, DBA BEYOND PUBLISHING**, a sole proprietorship,<br><br>   Defendants. | Civil Action No. 2:25-cv-00189 |

**PLAINTIFF'S
ORIGINAL COMPLAINT**

Plaintiff Kelly Lord ("Plaintiff") complains and alleges as follows against Defendants Michael Butler ("Butler"), M3 New Media ("M3"), and DBA Beyond Publishing ("BP") (collectively, "Defendants") as follows:

## I.   THE PARTIES

1. Plaintiff Kelly Lord is a resident of Frisco, Texas.

2. Defendant Butler is no longer a resident of the United States and has fled to Thailand to avoid legal proceedings and potential liability. Upon information and belief, Defendant Butler has relocated to Thailand specifically to evade service of process and potential legal consequences for his fraudulent activities.

3. This Court has general personal jurisdiction over Mr. Butler because: a. He has advertised book publishing services through the internet to every state in the United States b. He has committed tortious acts within the United States c. He has deliberately fled to Thailand to avoid legal accountability for his actions against a U.S. citizen

4. Upon information and belief Defendants BP and M3 are sole proprietorships of Defendant Butler.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) as this action arises under 17 U.S.C. § 501 (Copyright Act of 1976). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as they are related to the claims within the Court's original jurisdiction in that they form part of the same case or controversy.

6. This Court has general personal jurisdiction over Mr. Butler because, on information and belief, he does not reside in any district of the United States of America and has advertised his book publishing services through the internet to every state in the United States of America.

7. This court has personal jurisdiction over Beyond Publishing because it is the alter ego of Mr. Butler.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) as there is no district in which an action may otherwise be brought and 28 U.S.C. § 1391(c)(3) as defendant is not a resident in the United States and may be sued in any judicial district.

## III. THE NATURE OF THE ACTION

9. This action relates to copyright infringement, breach of contract, fraud, fraudulent inducement, defamation, tortious interference with contractual relationship, quantum meruit, money had and received, conversion, and preliminary and permanent injunction to recover Amazon account proceeds.

## IV.    BACKGROUND

10. This is a case for copyright infringement, breach of contract, fraud, defamation, quantum meruit, money had and received, and conversion.

11. Kelly Lord is an author, speaker, and singer who wrote the book "What You Are About to Hear is Real" ("Book" or "Work") which is the first book of its kind wherein each section of the book has an original song written and performed by the author, embedded within the book via QR codes. Ms. Lord procured her own federally registered copyright in 2015.

12. In January of 2023 Ms. Lord signed a publishing agreement with Michael Butler and Beyond Publishing (alter ego of Mr. Butler) under a "hybrid publishing" deal - where Mr. Butler and Beyond would not have any copyright interest in the book, the author pays a fee up front for a royalty split, and both parties market the book.

13. Mr. Butler also claims to be a retired pastor and uses that position of trust to recruit women who have been victimized by trauma.

**A.    Plaintiff's Registered Copyright**

14. Kelly Lord is a self-educated author and musical performer who has overcome severe adversity in her life.

15. From her author page on Amazon: Drawing from her own tumultuous upbringing marked by violence and alcoholism, Kelly Lord weaves a compelling tale of resilience, triumph, and the healing power of music. Through her captivating storytelling, readers are invited not only to witness her struggles but also to share in the laughter, tears, and triumphant moments that define her extraordinary journey.

16. Ms. Lord wrote her memoir/self help book What You Are About to Hear is Real and obtained a registered copyright for the book on June 29, 2015, Registration Number TXu001973829 and obtained a registered copyright for the music embedded in the book What

You Are About to Hear is Real on June 12, 2015, Registration Number Pau003764760.

**B.     The Parties' Publishing Deal**

17.     In January 2023 Ms. Lord signed a publishing deal with Michael Butler and Beyond Publishing ("Contract" and/or "Agreement"). Ms. Lord paid a $2,500 down payment as part of this agreement. The agreement provided that Defendant Butler and Defendant BP would pay Ms. Lord 50% of royalties "on all global ebooks and print books book sales." Audio book payout to author is 65%.

18.     The Parties also agreed that Ms. Lord would retain her copyright in her book. "Author, having the full power to make this agreement and maintaining all rights to this work… Author owns the copyright of this work."

19.     The Contract also allowed Ms. Lord to cancel the agreement at any time – "this agreement can be cancelled by Author at anytime [sic] in writing."

20.     The Contract also provides that BP would represent the work at all major book shows, in catalogs, and on websites and social media for life of agreement, until Author cancels in writing.

21.     Defendant Butler agreed that he would "introduce Author's ebook as a #1 International Bestseller on Amazon or moneyback.

**C.     Defendant Butler's Fraudulent Activities**

22.     On January 31, 2024 Defendant Butler texted Ms. Lord to have her open a Kindle Direct Publishing Account ("KDP Account").

23.     Defendant Butler then told Ms. Lord to give him her KDP Account login information over the phone under the fraudulent premise that he needed this information to set up a pre-sale link.

24. Defendant Butler also told Ms. Lord to forward any emails from Amazon to him so that he could "take care of them".

25. On February 1, 2024 Ms. Lord received an email from KDP that her bank account information had been changed.

26. Defendant Butler fraudulently changed the credentials and bank account information in the KDP Account to BP's account and then blocked both Ms. Lord's access to the account and her ability to view financial/sales information.

27. Defendant Butler also changed the information in the KDP Account to say that he and BP owned the copyright to the work.

28. Defendant Butler also opened an Audible account for the work without Ms. Lord's consent or acknowledgment, disallowing her any access to the account or account information.

29. Defendant Butler identified BP as the copyright holder on the Audible account. Whenever Ms. Lord called Audible to discuss her work, they told her she was not the account holder.

30. Unless otherwise informed by a third party, Ms. Lord was wholly unaware of the Defendant's fraudulent activities as specified *supra*.

**D.    Defendants' Collective Theft, Breach of Contract, and Infringement**

31. Ms. Lord's book What You Are About to Hear is Real was published on March 29, 2024:

    a. Hard Copy B&W

        i. ISBN-10 1637926855

        ii. ISBN-13 978-137926857

    b. Hard Copy Color

      i. ISBN-10 1637926812

      ii. ISBN-13 978-1637926819

   c. Paperback B&W

      i. ISBN-10 16379268020

      ii. ISBN-13 978-1637926826

   d. Paperback Color

      i. ISBN-10 1637926863

      ii. ISBN-13 978-1637926864

32. On June 13, 2024 Defendant Butler sent Ms. Lord an email stating she had only sold 50 books total, was only owed $500 in royalties, and he was going to subtract those royalties from payments he claimed Ms. Lord still owed. Defendant Butler threatened to take her book down from Amazon and other booksellers if she did not pay.

33. On June 20, 2024, Ms. Lord canceled her agreement with Defendant Butler in writing pursuant to the Agreement and told Defendant Butler to remove the listing for her book so that she could republish it herself with Amazon's Kindle Direct Publishing.

34. Despite Ms. Lord's cancellation of the agreement, Defendants continued to publish her work without her permission.

35. Ms. Lord spoke with a source at Expert Book Publisher ("EXP") informed Ms. Lord that Defendant Butler had changed the credentials in Ms. Lord's KDP Account to his credentials, and had listed the copyright for the work under his name.

36. EXP informed Ms. Lord that their Amazon sales tool showed estimated book sales of 47 hardcover copies of her work per day, 87 paperback copies, and 106 ebook copies, at an estimated total royalty rate of $45,000 per month, instead of the 50 book total sales and $500

total royalties Defendant Butler had told since inception. These numbers are only for Amazon, and not for other platforms like Ingram Sparks, Lightning Source, Audible ("ACX") and other potential platforms.

37. EXP estimated that Defendant Butler received royalties in the amount of $135,000 for the period of April-June only for Amazon.

38. EXP talked to a source at Amazon KDP and confirmed that Defendant Butler received a royalty payment for the Work on August 28, 2024 for approximately $30,000.

39. In response to the agreement being canceled on June 20, 2024, Defendant Butler sent a new invoice, claiming Ms. Lord was only owed $179 in total royalties. This invoice said Ms. Lord was only owed $54.19 in royalties for 3 days of sales in March, 2024 where she had sold 35 audiobooks, but there were no reports for April, May, or June. There was no report of sales on Amazon and only sales from April on Ingram Sparks.

40. Defendant Butler threatened Ms. Lord that if she didn't pay the invoice by 5pm her book was being taken down. She did not pay the invoice and the book was not taken down.

41. EXP sent Defendant Butler a demand letter instructing him to take her book down, to transfer her KDP account back to her, and transfer $90,000 in owed royalties to Ms. Lord.

42. Defendant Butler responded by saying "good luck proving $90,000" and fraudulently claiming he never had access to Ms. Lord's KDP Account.

43. Defendant Butler made defamatory comments to EXP regarding the "creditworthiness" of Ms. Lord, told them to get paid up front, and discouraged them from helping Ms. Lord.

44. Every time EXP called Beyond Publishing after this exchange they were told Defendant Butler was no longer associated with Beyond Publishing and fraudulently represented to EXP that he owned the copyright for the work, and that Ms. Lord had signed paperwork giving him the copyright.

45. Within the last six months, Beyond Publishing has listed as their business address 2300 McDermott Street, #140 in Plano, Texas. This address does not exist.

46. Defendant Butler fraudulently represented to EXP that he never had access to Ms. Lord's KDP account.

47. Ms. Lord contacted Dallas area local and federal law enforcement to report the theft of her copyrights, a federal felony criminal offense. (Frisco, TX Police Department, Officer Luther #DFS 24094835)

48. When contacted by law enforcement, Defendant Butler fraudulently represented to the police that he owned the copyright for the work, and that Ms. Lord had signed paperwork giving him the copyright.

49. On October 14, 2024 Defendant M3 sent a "legal notice" to EXP demanding that EXP "cease all work, communications, and financial transactions related to Kelly Lord, a client for whom we hold exclusive publishing rights" even though Plaintiff cancelled her publishing agreement with Defendants.

50. In the same legal notice, Defendant M3 claimed "Beyond Publishing retains exclusive financial control and rights to Ms. Lord's royalties and earnings from her works. Non-compliance with this order will result in the forfeiture of any prospective royalty payments through Expert Book Publisher" attempting to continue to exert control over Plaintiff's royalties while withholding distribution of same royalties to Plaintiff.

51. Defendant has suffered monetary and other damages as a result of Defendants' actions.

## V.     FIRST CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT, U.S.C. § 501 ET SEQ. BY ALL DEFENDANTS

52. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

53. Plaintiff is the owner of a valid copyright in the Work.

54. Without authorization, and through fraud and deceit, Defendants have reproduced, distributed, and publicly displayed the Work.

55. Defendants' actions constitute willful infringement of Plaintiff's copyright in violation of 17 U.S.C. §§ 106 and 501.

## VI.     SECOND CAUSE OF ACTION
### BREACH OF CONTRACT BY ALL DEFENDANTS

56. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

57. Plaintiff and Defendants entered into a valid and enforceable contract.

58. Plaintiff performed her obligations under the contract or were excused from performance because of breach and/or fraud by Defendant.

59. Defendants breached the contract by, among other things, failing to pay agreed-upon royalties and continuing to publish the Work after termination of the Agreement.

60. As a result of Defendants' breach, Plaintiff has suffered damages.

## VII.     THIRD CAUSE OF ACTION
### FRAUD BY ALL DEFENDANTS

61. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

62. Defendants made materially false representations to Plaintiff regarding sales figures and royalties.

63. Defendants knew these representations were false or made them recklessly without knowledge of their truth.

64. Defendants made materially false representations to third parties, including law enforcement that Defendant owned the copyright to the Work or had the copyright transferred to them.

65. Defendants intended for Plaintiff and third parties to rely on these representations.

66. Plaintiff and third parties relied on these representations to Plaintiff's detriment.

67. As a result, Plaintiff has suffered damages.

## VIII.   FOURTH CAUSE OF ACTION
### FRAUDULENT INDUCEMENT BY ALL DEFENDANTS

68. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

69. Defendants fraudulently induced Plaintiff to enter into the Agreement by misrepresenting their intentions and capabilities.

70. Plaintiff relied on these misrepresentations in entering into the Agreement.

71. As a result, Plaintiff has suffered damages.

## IX.   FIFTH CAUSE OF ACTION
### DEFAMATION BY ALL DEFENDANTS

72. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

73. Defendants made false statements about Plaintiff to third parties.

74. These statements were published to third parties.

75. These statements were made with actual malice or negligence.

76. These statements caused injury to Plaintiff's reputation and business.

## X. SIXTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

77. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

78. Plaintiff had valid and existing contractual relationships with potential publishing and marketing partners, including Expert Book Publisher ("EXP").

79. Defendant Butler was aware of these potential contractual relationships.

80. Defendant Butler intentionally interfered with these potential contractual relationships by:

a. Making defamatory comments about Plaintiff's creditworthiness to EXP;

b. Telling EXP to "get paid up front";

c. Discouraging EXP from assisting Plaintiff;

d. Representing falsely that he was no longer associated with Beyond Publishing when contacted by potential business partners.

81. Defendant Butler's actions were deliberate and calculated to prevent Plaintiff from establishing or maintaining business relationships necessary to market and distribute her book.

82. As a direct and proximate result of Defendants' intentional interference, Plaintiff has suffered damages, including: a. Loss of potential business opportunities; b. Damage to her professional reputation; c. Interference with her ability to market and distribute her book; d. Economic harm from lost potential partnerships and royalties.

83. Defendants' conduct was malicious, oppressive, and conducted with specific intent to harm Plaintiff's business relationships and economic interests.

## XI.  SEVENTH CAUSE OF ACTION
### *QUANTUM MERUIT*/UNJUST ENRICHMENT BY ALL DEFENDANTS

84. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

85. Plaintiff provided valuable services and property to Defendants.

86. Defendants accepted and retained the benefits of these services and property.

87. Under the circumstances, Defendants had reasonable notice that Plaintiff expected compensation for these services and property.

88. Defendants have failed to compensate Plaintiff for the reasonable value of these services and property.

## XII.  EIGHTH CAUSE OF ACTION
### MONEY HAD AND RECEIVED BY ALL DEFENDANTS

89. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

90. Defendants have received money in the form of royalties that in equity and good conscience belongs to Plaintiff.

91. Defendants have failed to pay this money to Plaintiff.

## XIII.  NINTH CAUSE OF ACTION
### CONVERSION BY ALL DEFENDANTS

92. Ms. Lord incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

93. Plaintiff had legal possession of or was entitled to possession of the royalties from the sale of her Work.

94. Defendants wrongfully exercised dominion or control over these royalties.

95. Plaintiff suffered injury as a result of Defendants' wrongful conduct.

## XIV.  TENTH CAUSE OF ACTION
### PRELIMINARY AND PERMANENT INJUNCTION TO RECOVER AMAZON ACCOUNT PROCEEDS

96. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

97. Defendants have wrongfully obtained and continue to control Amazon KDP and Audible account credentials and royalty proceeds belonging to Plaintiff, including but not limited to:

   a. Fraudulently changing KDP account login credentials

   b. Redirecting royalty payments to Defendants' accounts

   c. Blocking Plaintiff's access to sales and financial information

   d. Falsely claiming copyright ownership

98. Plaintiff seeks immediate injunctive relief to:

   a. Compel Defendants to immediately transfer full control of all Amazon KDP and Audible accounts related to the Work back to Plaintiff as well as all other accounts owned or controlled by Defendants up to the amount in controversy.

   b. Freeze and preserve all royalty proceeds in said accounts

   c. Require Defendants to provide a full, forensic accounting of all sales and royalty transactions since publication

   d. Prevent Defendants from further accessing, modifying, or controlling accounts related to the Work

99. Without immediate injunctive relief, Plaintiff will suffer irreparable harm, including:

   a. Continued misappropriation of royalties

   b. Ongoing interference with Plaintiff's intellectual property rights

c. Permanent damage to Plaintiff's publishing and professional reputation

100. The balance of hardships strongly favors Plaintiff, as Defendants have no legitimate claim to the accounts or royalties, while Plaintiff risks significant financial and professional damage.

101. A preliminary injunction is necessary to:

a. Preserve the status quo

b. Prevent further unauthorized use of Plaintiff's intellectual property

c. Protect Plaintiff's economic interests

d. Ensure full and transparent accounting of book sales and royalties

102. WHEREFORE, Plaintiff requests that this Court:

A. Issue a preliminary injunction immediately upon filing

B. Set an expedited hearing to confirm the preliminary injunction

C. Issue a permanent injunction upon final adjudication

D. Award Plaintiff all costs and fees associated with obtaining such relief

## XV.   DAMAGES

**A.   Copyright Infringement Damages:**

a. Direct Revenue Loss (March 29, 2024 – January 31, 2024):

b. Period: 7 months, 21 days

c. Monthly Amazon revenue (per EXP estimate):

   i. 47 hardcover copies/day × $15 avg royalty = $705/day

   ii. 87 paperback copies/day × $8 avg royalty = $696/day

   iii. 106 ebook copies/day × $5 avg royalty = $530/day

   iv. Total daily revenue: $1,931

   v. Monthly revenue: $90,000 (confirmed by EXP)

    d. Total Amazon revenue for period: $45,000 x 3 months = $135,000, $90,000 × 7 months = $630,000, total of $765,000.

    e. Additional platforms (Ingram Sparks, ACX, etc.) estimated at 25% of Amazon: $191,250.

    f. Total revenue loss: $956,250

B. Statutory Copyright Damages (Alternative):

    a. Up to $150,000 for willful infringement under 17 U.S.C. § 504(c)

C. **Breach of Contract Damages:**

    a. Direct Monetary Loss:

        i. Initial publishing fee: $2,500

        ii. Lost marketing opportunities: $25,000

        iii. Costs to republish: $5,000 Total: $32,500

D. **Fraud and Fraudulent Inducement Damages:**

    a. Compensatory Damages:

        i. Lost revenue from fraudulent reporting: $433,125

        ii. Costs of investigation and mitigation: $15,000

        iii. Lost business opportunities: $50,000 Total: $498,125

    b. Punitive Damages:

        i. Requested at 2× compensatory damages: $996,250

E. **Defamation Damages:**

    a. Professional Reputation Harm:

        i. Lost speaking engagements: $50,000

        ii. Lost publishing opportunities: $100,000

   iii. Industry reputation damage: $75,000 Total: $225,000

F. **Quantum Meruit/Unjust Enrichment:**

 a. Value of Services and Property:

   i. Book creation and development: $75,000

   ii. Marketing efforts: $25,000

   iii. Original music creation: $50,000 Total: $150,000

G. **Conversion and Money Had and Received:**

 a. Misappropriated Funds:

   i. Documented royalties: $433,125

   ii. Interest on withheld funds (5% per annum): $13,536

H. **Additional Damages:**

 a. Legal and Professional Fees:

   i. Attorney fees (estimated): $125,000

   ii. Expert witness fees: $15,000

   iii. Forensic accounting: $10,000

   iv. Court costs: $5,000 Total: $155,000

 b. Pre-judgment Interest:

   i. Calculated at 5% per annum on damages: $45,000

I. **Total Damages Summary**

 a. Actual Damages Route:

   i. Copyright Infringement: $956,250

   ii. Breach of Contract: $32,500

   iii. Fraud (Compensatory): $498,125

    iv. Fraud (Punitive): $996,250

    v. Defamation: $225,000

    vi. Quantum Meruit: $150,000

    vii. Conversion Interest: $13,536

    viii. Legal/Professional Fees: $155,000

    ix. Pre-judgment Interest: $45,000 Total Damages Sought: $3,071,661

  b. Statutory Damages Route (Alternative):

    i. Statutory Copyright Damages: $150,000 per work stolen/published

## XVI. PRAYER FOR RELIEF

103. WHEREFORE, Plaintiff respectfully requests that this Court:

J. Enter judgment in favor of Plaintiff on all counts;

K. Award Plaintiff her actual damages and Defendants' profits attributable to the infringement, or statutory damages, at Plaintiff's election, as provided by 17 U.S.C. § 504: and

L. Award Plaintiff damages for breach of contract, fraud, fraudulent inducement, defamation, *quantum meruit*, money had and received, and conversion;

M. Grant a permanent injunction prohibiting Defendants from further acts of infringement and granting her book "shell" accounts to Plaintiff on any and all platforms;

N. Order Defendants to provide a full accounting of all sales and royalties related to the Work;

O. Award Plaintiff her costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

P. Award Plaintiff pre-judgment and post-judgment interest and costs to the maximum extent allowed by law; and

Q. Grant such other and further relief as the Court deems just and proper.

R.	Allow alternative methods of service consistent with due process, including electronic service and service by publication, given Defendant's deliberate attempt to avoid legal proceedings by relocating internationally.


DATED: February 6, 2025										/s/ Bret P. Bryce, Esq.
Bret P. Bryce
bret@brycelawoffices.com
721 Fondi Ct. Ste K101
South Jordan, Utah 84095
Telephone: (801) 696-4644
Attorney for Plaintiff Kelly Lord